UNITED STATES of America

v.

Bernice MERRITT, Appellant.

No. 13436.

United States Court of Appeals
Third Circuit.

Submitted April 20, 1961.

Decided July 12, 1961.

Albert Martin, Pittsburgh, Pa., for appellant.

Hubert I. Teitelbaum, U. S. Atty., Daniel J. Snyder, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

21.  15 U.S.C.A. § 77q.

22.  15 U.S.C.A. § 77q(c).

KALODNER, Circuit Judge.

Following a jury trial, defendant Bernice Merritt, was found guilty and sentenced [1] for violation of the narcotic law.[2]

She prosecutes this appeal on the ground that the evidence which established her guilt—possession of heroin—was obtained in an illegal search and seizure and that the District Court had erred in denying her motion to suppress the evidence, duly made prior to trial.

Critical to our disposition of this appeal are these facts:

On February 24, 1960, Federal Narcotics Agent Dillworth applied to a United States Commissioner for the issuance of a search and seizure warrant making affidavit at the time that he had reason to believe that defendant, a known narcotic violator who had made sales of narcotics on January 27th and 28th, 1960, had narcotics concealed in the apartment which she occupied on the second floor of 212 State Street, (rear), Clairton, Pennsylvania.

The Commissioner issued a search and seizure warrant which provided for its service and a search of defendant's apartment "in the daytime".

The District Court, in its Opinion [3] denying defendant's motion to suppress made the factual finding that the warrant was not served "until 7:30 P.M. at night." [4]

The officers making the service,[5] members of the Pittsburgh police force and local county officers, broke open the door of defendant's apartment and when they entered she threw a package out of the window. The package, which landed on the top of an automobile outside the house, was immediately recovered by the police and found to contain heroin. In a search of defendant's apartment made during the following hour and half the officers found additional heroin and needles and syringes, which defendant concedes she owned.

The District Court in its Opinion found that "the search warrant was legally invalid" because it was served at night and not during daytime as provided by its terms. It, however, denied the motion to suppress for these stated reasons:

"I am satisfied that the circumstances underlying the facts of this seizure bring it within one of the exceptions to the rule that a search must rest upon a search warrant.

"In short, it appears that Government officers approached petitioner's premises with the view to interrogation and investigation. The petitioner, in the act of throwing a quantity of heroin out of the window, in the view and presence of Government officers, voluntarily revealed the package of narcotics to the officers' view which created the basis of a lawful arrest by the reasonable cause to believe that a felony was being committed in their presence. Jose Terrones Rios v. United States, No. 52, October Term 1959, decided June 27, 1960, officially unreported. [Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688]

"I am fully satisfied that probable cause was amply shown in support of the search."

---

1. Defendant was sentenced, as a second offender, to pay costs and a fine of $1.00 and to a 10-year prison term.

2. 21 U.S.C.A. § 174.

3. The Opinion is unreported.

4. Testimony adduced at the hearing on defendant's motion to suppress established that the sun set at 6:06 P.M. on the day of the service of the search and seizure warrant.

5. Federal Narcotics Agent Emrich accompanied the officers to defendant's apartment and gained admission after exhibiting the search warrant to her mother; Emrich then gave the warrant to one of the Pittsburgh police officers in the group and retired from the scene because as an "undercover" agent he did not want to be seen by defendant.

The defendant on this appeal [6] urges that the District Court's fact-finding that the search warrant was not served until after nightfall and its "conclusion" that "the search warrant was legally invalid in view of the fact that the conduct of the searching officers was not within the authorization of the warrant" required the District Court to sustain her motion to suppress and that it erred in failing to do so.

The Government, in reply, makes these contentions: (1) the circumstance that the search warrant was served at night does not make it "illegal" because the Narcotic Control Act of 1956 [7] provides that "a search warrant may be served at any time of the day or night if the judge or the United States Commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist", and (2) the seizure of the mooted evidence was "incidental to a lawful arrest" since the "officers approached the premises with a view to interrogation and investigation" and the defendant, "when she threw packages of heroin out of the window, in view and presence of Government officers, voluntarily revealed the narcotics to view which created the basis of a lawful arrest by reasonable cause to believe that a felony was being committed in their presence."

■ We need not dwell on the Government's first point for the simple reason that the search warrant by its specific terms provided for its execution "in the daytime" and that circumstance is conclusive; it makes irrelevant the fact that the United States Commissioner is empowered under the Narcotic Control Act to provide for its service "at any time of the day or night." [8]

■ The Government's second point, which was the premise of the District Court's denial of the motion to suppress, is utterly without merit.

The Government, as did the District Court, errs in its reliance on Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688. That case affords no support for such reliance. In Rios, as two policemen approached a standing taxicab for the purpose of routine interrogation of its passengers one of them dropped a *recognizable* package of narcotics to the floor of the vehicle; the policemen were not in possession of an arrest or search warrant at the time they approached the taxicab nor did there exist, as they did so, "probable cause for an arrest". The Supreme Court held (364 U.S. at pages 261–262, 80 S.Ct. at page 1436):

"If, therefore, the arrest occurred when the officers took their positions at the doors of the taxicab, then nothing that happened thereafter could make that arrest lawful, or justify a search as its incident. * * * But the Government argues that the policemen approached the standing taxi only for the purpose of routine interrogation, and that they had no intent to detain the petitioner beyond the momentary requirements of such a mission. If the petitioner thereafter voluntarily revealed the package of narcotics to the officers' view, a lawful arrest could then have been supported by their reasonable cause to believe that a felony was being committed in their presence. *The validity of the search thus turns upon the narrow question of when the arrest occurred,* and the answer to that question depends upon an evaluation of the conflicting testi-

---

6. In view of our disposition other points raised by defendant with respect to the issuance of the warrant and its service need not be considered.

7. 18 U.S.C. § 1405.

8. The Government's view that the legislative history of Section 1405 discloses that the section authorizes day or night serv-

ice irrespective of a limited authorization as to time of service in the warrant issued is without merit. The legislative history evidences that Section 1405 was enacted only to change the provisions of Rule 41(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., pertinent to the *issuance* of search warrants and not to their *service*.

mony of those who were there that night." (Emphasis supplied.)

In the instant case the facts disclose that the officers did not enter defendant's bedroom "for the purpose of routine interrogation" but in the course of executing what they thought was a valid search and seizure warrant which had been issued by the United States Commissioner pursuant to an affidavit of a Federal Narcotics Agent (Dillworth) averring "there is probable cause to believe" that narcotics were being concealed by defendant in the premises authorized to be searched.

By analogy, there was here an invalid "arrest" when the officers illegally broke down the door of defendant's bedroom and entered it to make their search and "then nothing that happened thereafter [the recovery of the package of heroin] could make that arrest lawful or justify a search as its incident." Rios v. United States, supra.

The Government has cited two cases, Abel v. United States, 1960, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 and Hester v. United States, 1924, 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898 as validating the seizure of the heroin package thrown out of the window and permitting its admission as evidence of defendant's guilt.

The cases cited are inapposite on their facts. In Abel the *Immigration and Naturalization Service officers* arrested the defendant on an administrative warrant for deportation, searched the hotel room where he was arrested, his person and luggage, and seized certain articles. *After defendant had checked out of his hotel room, an agent of the Federal Bureau of Investigation* made a further search of the room, *without a warrant,* but with the *consent* of the hotel management, and seized certain articles which defendant had left there. On these facts it was held that the Government did not use the *administrative warrant of the Immigration and Naturalization Service* as an improper instrument of the *Federal Bureau of Investigation* in obtaining the challenged evidence, and the search, made

by the FBI of the defendant's room after he had abandoned it, with the consent of the hotel management, was lawful and therefore the evidence then found was admissible.

In Hester the defendant, when an alarm was sounded of the nearby presence of revenue agents, took a jug of moonshine whiskey, "easily recognizable" as such, from within an automobile which was parked some distance from his home. While attempting to make a "get-away" he dropped the jug and it broke but some of its contents remained in it. The broken jug was seized by the revenue officers. Immediately prior to the sounding of the alarm the defendant came out of his home and handed a quart bottle to one Henderson. The revenue officers at the time were concealed about at a point from fifty to one hundred yards from the house. Henderson joined the defendant in his escape attempt and tosssed away the quart bottle which he had been earlier given by the defendant. That bottle was also recovered. The officers, when these events transpired, *"had no warrant for search or arrest"* and it was contended that for that reason the evidence seized outside the defendant's home was obtained by an illegal search and seizure. On these facts it was held that "The defendant's own acts, and those of his associates, disclosed the jug, * * * and the bottle—and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned. This evidence was not obtained by the entry into the house and it is immaterial to discuss that."

What has been said demonstrates that the District Court erred in premising its denial of the defendant's motion to suppress on its conclusion "that the circumstances underlying the facts of this seizure bring it within one of the exceptions to the rule that a search must rest upon a search warrant."

The District Court's correct conclusion of law that "the search warrant was legally invalid", premised on its factual finding that the warrant was served at night and not during daytime as provided

by its terms, obliged the District Court to sustain the motion to dismiss, and it erred in failing to do so.

Since the warrant was "legally invalid" the officers' entry into the defendant's apartment was on the same plane as an entry without any warrant at all and as such was an unlawful "invasion" within the proscription of the Fourth Amendment.[9] As a consequence the "fruits" of the entry were inadmissible as evidence and should have been suppressed.

It was settled more than three quarters of a century ago in Boyd v. United States, 1886, 116 U.S. 616, at page 635, 6 S.Ct. 524, at page 535, 29 L.Ed. 746 that, as the Court there stated:

> "[C]onstitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of [the] courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*."

In Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 further vitality was imparted to the Boyd doctrine by the Supreme Court's holding that in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure. In doing so it stated (232 U.S. at page 393, 34 S.Ct. at page 344):

> "The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land."

In logical development of the rationale of the cases cited, the Supreme Court, in Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520, ruled that the fruits of an illegal search are not admissible even though they clearly establish the guilt of the defendant.

In Byars, counterfeit stamps were found in executing a search warrant which was held "bad if tested by the Fourth Amendment and the laws of the United States." 273 U.S. at page 29, 47 S.Ct. at page 248. There, a timely motion to suppress the evidence so found had been denied and the defendant was subsequently convicted on the basis of his possession of the counterfeit stamps.

In holding that under the circumstances the motion to suppress was erroneously denied the Court said (273 U.S. at pages 29–30, 47 S.Ct. at page 248):

> "Nor is it material that the search was successful in revealing evidence of a violation of a federal statute. *A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this Court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed.* * * *"

and at page 32 of 273 U.S., at page 249 of 47 S.Ct.:

> " * * * the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods." (Emphasis supplied.)

In United States v. Di Re, 1932, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed.

---

**9.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

210 the principles stated in Byars were put as follows:

"We have had frequent occasion to point out that *a search is not* \* \* \* *made legal by what it turns up.* \* \* \* *In law it is good or bad when its starts and does not change character from its success.* \* \* \* Taking the law as it has been given to us, this arrest and search were beyond the lawful authority of those who executed them. The conviction based on evidence so obtained cannot stand." (Emphasis supplied.)

Again, in Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, it was held that all evidence obtained by an unconstitutional search and seizure was inadmissible in a federal court regardless of its source (search and seizure by state or local police).

In the instant case the search, as the District Court found, was unlawful when it started and that being so did "not change character from its success" and the use of the "evidences of crime" which came "to light" thereafter, cannot "be tolerated under our constitutional system."

It is pertinent to note that since this appeal was argued the Supreme Court in Mapp v. Ohio, 81 S.Ct. 1684, 1694, reaffirmed the principles enunciated in its prior decisions herein discussed.

Of particular relevance here is this statement in Mapp:

"The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in Olmstead v. United States, 277 U.S. 438, 485 [48 S. Ct. 564, 575, 72 L.Ed. 944]. (1928): 'Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. \* \* \* If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' "

For the reasons stated the judgment of conviction and sentence will be reversed and the cause remanded to the District Court with directions to proceed in accordance with this opinion.