530 So.2d 1336 (1988)
Sammy STRANGE and Dianne N. Strange
v.
STATE of Mississippi.
No. 56984.
Supreme Court of Mississippi.
July 27, 1988.
Rehearing Denied October 5, 1988.
*1337 Leonard H. Rosenthal, Edwin E. Kerstine, Natchez, for appellants.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
ROBERTSON, Justice, for the Court:

I.
Today's appeal asks that we take seriously that, when invading the privacy of one's home to search for contraband, an officer's authority is limited by the warrant he holds. Here the warrant in no uncertain terms authorized searches only "in the day time". The search at issue, yielding a substantial quantity of marijuana, was conducted at 11:30 p.m.
We hold that the officers exceeded their authority, that the fruits of the search were inadmissible as evidence at trial, and, en route, reverse and remand for a new trial.

II.
On the evening of October 15, 1984, Sheriff Hubert L. McGlothin of Concordia Parish, Louisiana, received a tip from a confidential informant that Sammy and Dianne Strange had a large amount of marijuana in their garage apartment at 722 Pearl Street in Natchez, Mississippi. The informant, who had given McGlothin reliable information in at least nine previous drug cases, told McGlothin that he had seen the marijuana in the Stranges' apartment that day.
Because Natchez was outside of his jurisdiction, Sheriff McGlothin telephoned Adams County Chief Deputy Sheriff Tommy Ferrell and passed on the information. Deputy Ferrell in turn told Adams County Deputy John Manley what he had learned and instructed that Manley take an unmarked car and drive by the apartment and obtain a visual description of it. After Manley had done this, Ferrell directed him to swear out an affidavit for a search warrant. Deputy Manley then personally appeared before County Judge John Hudson and presented an Affidavit for search warrant.
Pursuant to that affidavit, Judge Hudson issued a search warrant which reads as follows:

*1338 SEARCH WARRANT
(C. 2576)
STATE OF MISSISSIPPI Adams County
TO ANY LAWFUL OFFICER IN ADAMS COUNTY.
Whereas, Deputy John Manley has this day made complaint on oath before the undersigned, a County Court Judge in and for said county, that certain personal property, to-wit: marihuana and other controlled substances and paraphernalia associated with said marihuana and other controlled substances, are being kept at white, wood-framed, garage apartment located behind the house at 722 North Pearl Street, Natchez, Adams County, Mississippi and that said affiant suspects and shows that probable cause does exist to suspect that said Sammy Strange of said County has the aforementioned drugs at that said property, or some part thereof, is now deposited or concealed in the dwelling house or on the premises of said Sammy Strange in said County.
Therefore, we command you, that in the day time, with such aid as shall be needful, you do forthwith proceed diligently to search the house or premises of said Sammy Strange property is suspected to be deposited or concealed, making known to the occupant thereof, if any, your authority for doing so; and if property, or any part thereof, be found, that you seize and bring the same before me, at my office, without delay, so that lawful action may be had in the premises, and have there then this writ.
Witness my hand, the 15 day of October, 1984.
 /s/ John Hudson 
 County Court Judge
[Emphasis Added]
Armed with the warrant, at 11:30 p.m. on October 15, 1984, Deputy Manley and three other officers went to 722 North Pearl Street. Sammy and Dianne Strange were at home in their apartment. Manley and three other officers proceeded to execute the warrant, seizing, among other things, nine grocery bags of a green, leafy, vegetable-like substance which subsequent tests revealed to be marijuana.
Sammy Strange and Dianne N. Strange were charged in an indictment filed December 15, 1984, in the Circuit Court of Adams County, Mississippi, with possession of marijuana with intent to distribute. Miss. Code Ann. § 41-29-113(c)(12) and 41-29-139(a)(1) (Supp. 1987).
The Stranges moved to preclude the prosecution's use at trial of the fruits of the search, presenting several grounds including violations of the "in the day time" restriction in the warrant and a challenge to the probable cause basis for issuance of the warrant. After a hearing, the Circuit Court held that the affidavit was "deficient" and that the search warrant was "a nullity" but never stated the basis for its ruling. Notwithstanding, the Court then denied the motion to suppress, stating, "I'm satisfied that under the law of the State of Mississippi that the deputy sheriff had a probable cause to go to that establishment that night, that house that night believing that a crime was in progress at the time."
After severance the cases were called for trial in the Circuit Court in July of 1985, whereupon Sammy and Dianne Strange were each convicted of possession, with intent to distribute, of more than a kilogram of marijuana. Sammy Strange was sentenced to a term of twelve years. Dianne Strange was given a twelve year suspended sentence and was placed on five years probation. Both have appealed, and the State has cross-appealed.

III.
Admissibility of the fruits of the search is challenged on a number of grounds. One is sufficient for the moment. The warrant authorized Deputy Manley to search the premises at 722 North Pearl Street in Natchez and to look for marijuana and other controlled substances. In relevant part the warrant then provided:
Therefore, we command you, that in the day time, with such aid as shall be needful, you do forthwith proceed diligently to search the house or premises

*1339 ... .
[Emphasis Added] In fact Deputy Manley and the other officers went to the Strange apartment at approximately 11:30 p.m. on October 15, 1984, and then and there conducted their search. We take judicial notice that 11:30 p.m. is not "in the day time". See Rule 201(b) and (f), Miss.R.Ev.
The Stranges argue that the "in the day time" language was a legal restriction on the officers' authority and that any search conducted at 11:30 p.m. was per se unlawful. We have never addressed the point. We have, however, much law, recent and ancient, that the searching officer's authority is limited to that conferred by the warrant, subject to exceptions not relevant here.[1]See, e.g., Carney v. State, 525 So.2d 776, 785 (Miss. 1988); Lockett v. State, 517 So.2d 1317, 1325-26 (Miss. 1987); Cofer v. State, 152 Miss. 761, 771, 118 So. 613, 616 (1928); Fatimo v. State, 134 Miss. 175, 179, 98 So. 537 (1924).
Vaughn v. State, 136 Miss. 314, 319, 101 So. 439 (1924) concerned a warrant directing a search for whiskey in a certain automobile described as belonging to one Clayton. That warrant conferred no authority to search a different automobile, one owned by Vaughn, even though Clayton was in it. In Owens v. State, 133 Miss. 753, 768, 98 So. 233 (1923), the warrant authorized the search for a whiskey still on the premises of Lonny Williams but gave the officer no legal power to search and seize one on Ned Owens' property. No knowledge of Einstein's space-time is necessary to see that the principle requiring respect for east-west limitations in a search warrant mandates like respect for day-night ones.
Our sister state of Alabama has confronted this problem. In cases where the warrant limited the officer's authority to a day time search Alabama has held inadmissible fruits of a search conducted at night. See Pate v. State, 42 Ala.App. 350, 351, 165 So.2d 127 (1964); Edwards v. State, 42 Ala.App. 307, 308, 162 So.2d 894 (1964); Weldon v. State, 39 Ala.App. 286, 97 So.2d 825 (1957). The United States Court of Appeals for the Third Circuit construing federal law has similarly enforced warrants limiting the officer's authority to a "search in the day time". United States ex rel. Boyance v. Myers, 398 F.2d 896, 898-99 (3d Cir.1968); United States v. Merritt, 293 F.2d 742, 744 (3d Cir.1961).
In response, the prosecution cites no law but merely argues that we should ignore the "in the day time" language in the search warrant on grounds that it is merely "part of the printed search warrant form". The point is specious. We are further told that Judge Hudson, who issued the warrant, effectively countermanded the "in the day time" phrase by telling Chief Deputy Ferrell, before the warrant was issued, "to proceed forthwith". This point is only slightly less specious.
As a matter of law, the only way Judge Hudson could have altered the command of the search warrant would have been to delete the "in the day time" phrase therefrom. To be sure, this was within his authority, and, if he had done so, the 11:30 p.m. search would have been quite proper. The judge who issues a warrant is not required to confer upon the searching officer the full range of authority allowed by law. He is within his prerogatives to limit the officer's authority, either by use of a pre-printed form or by interlined language. That Judge Hudson issued the warrant in the form before us in this record establishes as a matter of law that the officer's authority was limited to conducting a search in the day time. See United States v. Merritt, 293 F.2d 742, 744 (3d Cir.1961).
The Circuit Court held that Deputy Manley and the other officers had exceeded any authority conferred by the warrant, albeit the grounds of its actions are not completely clear. The ground here discussed is sufficient that we affirm and reject the State's cross-appeal.

*1340 IV.
Notwithstanding, the Circuit Court allowed the seized marijuana to be received as evidence on grounds Deputy Manley had probable cause to go to the Strange home, that once inside the residence the officer smelled the odor of marijuana, and that once this smell was detected, he had the authority to seize the marijuana, all wholly extraneous to the authority of the search warrant.
Deputy Manley's testimony belies the point. His "purpose of going to the house was to serve the search warrant ... and to search that house." The probable cause for arrest theory offered by the Court below appears an afterthought which in no event would authorize the extensive search the officers' made, much less the seizure. Beyond that most, if not all, of the evidence was seized prior to the arrest.
The Circuit Court's ruling nevertheless requires that we consider whether the search and seizure may be vindicated under any exception to the warrant requirement. The point assumes the legality of the officers' presence on the Strange doorsteps but wholly accepts our holding above that the officers were armed with a warrant that forbade nighttime execution.
First, this seizure may not be saved on any plain smell corollary to the plain view exception.[2] Under the facts of this case, the "very strong odor" of marijuana sniffed by Deputy Manley could not in fact have led to the marijuana absent the same extensive search and seizure we have in Part III above held beyond the officers' authority. Since the marijuana was not in the officers' plain view, their search and seizure were illegal. See Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and Carney v. State, 525 So.2d 776, 785 (Miss. 1988). The practical alternative both permitted and compelled by the Constitution was to have several officers secure the home while one or more of the others obtained a new and more adequate warrant.
Moreover, any scents then detected could at most furnish probable cause for issuance of a warrant that would authorize nighttime searches. No exigent circumstances existed, as, again, three of the officers could have secured the premises while a fourth complied with the Constitution and obtained a warrant. See Mincey v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); United States v. Killebrew, 560 F.2d 729, 733 (6th Cir.1977); United States v. Morgan, 743 F.2d 1158, 1162 (6th Cir.1984); United States v. Allard, 600 F.2d 1301, 1304 (9th Cir.1979); see also United States v. Morgan, 743 F.2d at 1163; United States v. Patino, 830 F.2d 1413, 1417 (7th Cir.1987); and United States v. Dowell, 724 F.2d 599, 602 (7th Cir.1984). ("Law enforcement officials may not deliberately wait for exigent circumstances to arise and then exploit the exception to justify warrantless entry.")
The State argues further that we should save this search on grounds the officers were acting in objective good faith. Even if this were a viable theory under our law, it would profit the case for the prosecution precious little. Assuming the officers may have been acting in subjective good faith, their substantial violation of the warrant's clear and simple temporal limitations preclude any suggestion that their conduct may be accurately labeled objective good faith.
Finally, there is nothing to the suggestion that the Stranges may have consented to the search. Quite apparently, Sammy Strange's cooperation resulted from his being served with the warrant. In such circumstances our law presumes lack of consent. Smith v. State, 133 Miss. 730, 736, 98 So. 344, 345 (1923).
In short, the seizure of this evidence cannot be justified on any basis. The Circuit *1341 Court erred in failing to grant the motion to suppress. That error is of sufficient magnitude that we reverse and remand for a new trial, consistent in all respects with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE. C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ZUCCARO, J., not participating.
NOTES
[1] See Part IV below for a consideration of the (un)availability of several possible exceptions to the rule stated above.
[2] The search at issue was conducted in the Stranges' home, the place where their privacy interests are highest. The plain smell principle is strictly construed against the state where it is invoked to justify a warrantless search of one's home. See Miller v. State, 373 So.2d 1004, 1008-09 (Miss. 1979) (Broom, J., specially concurring).