746 So.2d 953 (1999)
Robert WHITE a/k/a Robert Lee White, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01335-COA.
Court of Appeals of Mississippi.
April 20, 1999.
Certiorari Denied October 7, 1999.
*954 Donna J. Hodges, Jackson, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred III, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Robert White appeals his conviction of possession of cocaine and possession of a firearm by a convicted felon, raising the following issues as error:
I. THE TRIAL COURT ERRED IN ALLOWING INTRODUCTION OF EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANT WHICH WAS ISSUED AS A "KNOCK-AND-ANNOUNCE" WARRANT, BUT WAS EXECUTED AS A "NO-KNOCK" WARRANT, IN THE ABSENCE OF EXIGENT CIRCUMSTANCES ON THE PARTICULAR FACTS OF THIS CASE.
II. THE TRIAL COURT ERRED IN REFUSING TO ALLOW A CONTINUANCE TO ALLOW THE DEFENDANT TO RETAIN COUNSEL OF HIS CHOICE FOR TRIAL.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. In February of 1996, David Sullivan was serving as the director of the Central Delta Drug Task Force. Sullivan began an investigation of Robert White after receiving intelligence reports from various law enforcement agencies in Sunflower County, Mississippi. Through a confidential *955 informant it was discovered that White was selling crack cocaine from his residence at 215 Southwest Plaza, Indianola, Mississippi. Sullivan also learned that a previous search of this residence by the Task Force had turned up firearms and a small quantity of cocaine. A controlled buy was arranged in which the confidential informant purchased $50 worth of crack cocaine from the residence.
¶ 4. A second informant advised the Task Force that White had fortified his residence by placing a six foot wood fence around the rear of the residence and a six to eight foot electrified fence around the front of the residence. The informant advised that the front fencing contained razor wire on top. The source conveyed to the Task Force that to enter the residence one had to proceed through a large electric gate in the front of the home. The informant further advised that each window and each door of the house had security bars, and that White had purchased a rottweiler which ran loose in the yard area. The source also had observed several drug transactions at the residence which were completed through a steel security door which contained a slot located around the door knob area. The source said that the security door was secured by three dead bolt locks, and that the individuals dealing the drugs inside the residence would not open the door during the transactions. It was determined through this source that the business hours of this house were approximately 10:00 a.m. to 10:30 p.m. Sullivan personally observed the house in question, discovering it to be a single family brick dwelling, with an unenclosed carport, with a front door, a back door, and a carport door, each having a steel security door.
¶ 5. A decision was made to infiltrate the house and conduct a search of the residence. On March 7, 1996, Sullivan conducted a meeting with at least fifteen law enforcement officers. All relevant information was presented by affidavit to Justice Court Judge Charlotte Buchanan in order to obtain a search warrant. The affidavit specifically asked "Affiant also requests that this warrant be titled a No-Knock Search Warrant for the purposes of securing individuals at the residence and to prevent destruction of evidence prior to officers being able to gain entry. Also based on affiant's experience as a narcotics investigator this will afford additional safety for approaching officers at the time the warrant is executed." A search warrant was issued; however, it contained the following language "THEREFORE, you are hereby commanded to proceed at any time in the day or night to the place described above and to search forthwith said place for the things specified above, making known to the person or persons occupying or controlling said place, if any, your authority and purpose for so doing, before making a search or forcible entry prior to said search...."
¶ 6. Ideally Sullivan wanted to arrive at the home at a time when the gate was open. A drive-by was conducted ten minutes before the raid, and the gate was open. However, when the raid actually commenced, the gate was closed. The raid began around 9:30 p.m. and consisted of a caravan of five vehicles. As Sullivan drove toward the residence, he saw that the gate was closed. Sullivan believing he was now committed, decided to open the gate with any means possible. Sullivan drove his Dodge Ram through the front gate. Three teams exited the vehicles in order to cover each door. A sledge hammer was used in an attempt to enter through the front, but this attempt was unsuccessful. A hydraulic press was used on the carport door which successfully opened the door. At the same time the officers were trying to gain entry into the house other officers broke out windows and sprayed mace in both the master bedroom and kitchen. During the raid officers continuously shouted "Search warrant, Sheriff's Department," and "Search warrant, Police."
¶ 7. White was apprehended as he came out of his bedroom. White was carrying *956 an automatic pistol. The pistol was not loaded, and its slide was locked to the rear. Officers told White to drop the gun. White complied and was taken into custody. White's wife and daughter were secured in the hallway of the home. A search of the house produced cocaine residue, weapons, and various items associated with drug trafficking.
¶ 8. White was indicted for possession of cocaine with the intent to sell, assault on a police officer, and possession of a firearm by a convicted felon. A trial was commenced on June 25, 1996. At the close of the State's case-in-chief, the trial court granted a directed verdict of not guilty of possession with intent to deliver, allowing only the lesser-included-offense of simple possession to go the jury. The trial court also directed a verdict of not guilty of assault on a police officer. The jury returned a verdict of guilty for possession of a controlled substance and possession of a firearm by a convicted felon.

ANALYSIS

I.

THE TRIAL COURT ERRED IN ALLOWING INTRODUCTION OF EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANT WHICH WAS ISSUED AS A "KNOCAND-ANNOUNCE" WARRANT, BUT WAS EXECUTED AS A "NKNOCK" WARRANT, IN THE ABSENCE OF EXIGENT CIRCUMSTANCES ON THE PARTICULAR FACTS OF THIS CASE.
¶ 19. White argues that the trial court erred in admitting evidence seized pursuant to the search warrant in this case due to the unreasonableness of the search and seizure. White complains that as a result of the failure to "knock-and-announce" in the absence of exigent circumstances, the trial court should have found the search to be unreasonable and exclude all evidence seized as a result.
¶ 10. White makes several arguments why the evidence seized as the result of the warrant should have been excluded. First, White points out that while Mississippi at one time had a statute, Miss.Code Ann. § 41-29-157(c) (Rev.1993), which specifically allowed "no-knock" searches, the particular subsection allowing "no-knock" searches was automatically repealed after July 1, 1974 and is no longer in effect. White contends that in the absence of such a statute a "no-knock" warrants cannot be issued. Next, White argues that even if Mississippi allows "no-knock" warrant that the circumstances of this case did not justify a "no-knock" warrant; therefore, the search in this case was unreasonable. Finally, White argues that under Strange v. State, 530 So.2d 1336, 1339 (Miss.1988), a searching officer's authority is limited to that conferred by the warrant. White maintains that the search warrant specifically stated that it was a "knock-and-announce" warrant; therefore, the executing officers exceeded their authority and violated White's constitutional rights.
¶ 11. We are not persuaded by White's arguments. Although Miss.Code Ann. § 41-29-157(c) (Rev.1993) is no longer in effect that does not mean "no-knock" warrants can never be issued. Mississippi has no statute which specifically prohibits "no-knock" warrants, and our case law has never prohibited the issuance of "no-knock" warrants. Furthermore, the United States Supreme Court has clearly held that "no-knock warrants" are permissible under the Fourth Amendment:
For now, we leave to the lower courts the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. We simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry. *957 Wilson v. Arkansas, 514 U.S. 927, 936, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).
In addition, the United States Supreme Court has held:
In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.... This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.
Richards v. Wisconsin, 520 U.S. 385, 390, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).
¶ 12. Given the particular circumstances of this case, we hold that a "no-knock" warrant was both justified and reasonable in this instance. White was living in a virtual fortress. Any announcement made by the officers would only give White more time to destroy evidence. Furthermore, as the underlying facts supporting the warrant indicated, White was a convicted felon and a previous search of the residence had produced firearms. Therefore, the safety of the officers involved justified a "no-knock" warrant. In addition, most if not all officers yelled out their purpose and identity as they conducted the raid. There were substantial reasons for the issuance of a "no-knock" warrant in this case, and the warrant was executed reasonably.
¶ 13. White's final argument under this assignment is that the warrant explicitly stated it was a "knock-and-announce" warrant, and that the officers exceeded their authority by executing a "no-knock" search. White's argument is based on a reading of Strange. However, White's reliance on Strange is misplaced. Strange involved a case where an officer swore out an affidavit for a search warrant on the evening of October 15, 1984. Strange, 530 So.2d at 1337. The warrant was granted but specifically stated it should be executed in the day time. Id. at 1338-39. The only testimony countermanding the explicit language of the search warrant was the fact the issuing judge had told the officer before the warrant was issued "to proceed forthwith." Id. at 1339. Our supreme court found this argument to be specious at best, and held "[t]hat Judge Hudson issued the warrant in the form before us in this record establishes as a matter of law that the officer's authority was limited to conducting a search in the day time." Id.
¶ 14. In the case sub judice, the issuing magistrate, Justice Court Judge Charlotte Buchanan, testified at the suppression hearing as opposed to Strange where the only thing evidencing the judge's intent was the warrant itself. Buchanan testified clearly that she was asked to issue a "no-knock" warrant, and that it was her full intention to issue a "no-knock" warrant. Buchanan further testified that the search warrant in question was a standard one given to her, and she merely failed to strike out the "knock-and-announce" language of the warrant. Buchanan unequivocally stated that it was her intent to issue a "no-knock" warrant, and that she informed the officer-affiant of this intent.
¶ 15. The United States Supreme Court has stated "[s]uppressing evidence because the judge failed to make all the necessary clerical corrections despite his assurances that such changes would be made will not serve the deterrent function that the exclusionary rule was designed to achieve." Massachusetts v. Sheppard, 468 U.S. 981, 990-91, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). See also Arizona v. Evans, 514 U.S. 1, 15, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). In this case the issuing magistrate simply failed to make the proper changes in the warrant issued. Her intention was to grant a "no-knock" warrant and a "no-knock" warrant is exactly what the officers involved believed they had been granted. There is no reason why a clerical mistake on part of the judge should result in the *958 suppression of the evidence seized. Accordingly, this issue is without merit.

II.

THE TRIAL COURT ERRED IN REFUSING TO ALLOW A CONTINUANCE TO ALLOW THE DEFENDANT TO RETAIN COUNSEL OF HIS CHOICE FOR TRIAL.
¶ 16. White argues that only six weeks passed from service of the indictment on May 14, 1996 until the beginning of trial on June 25, 1996. White asserts that his trial counsel filed a motion to continue the case on June 3, 1996, and the motion was not ruled upon until June 21, 1996, only four days before trial. White maintains that, in the interim, he was in the custody of the federal government, unable to freely assist in preparation of his case. Further, White complains he was unable to freely communicate with other counsel whom he wished to retain for representation at trial. White personally renewed his motion for continuance to the trial court on the first day of trial, seeking additional time to retain other counsel and to prepare for trial. The trial court denied White's motions. White now asserts that the denial resulted in a violation of his Sixth Amendment right to counsel. Accordingly, White seeks a new trial.
¶ 17. Miss.Code. Ann. § 99-15-29 (Rev.1994) provides that a court "may grant or deny a continuance, in its discretion," and that a denial of a continuance "shall not be grounds for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom." In order for us to reverse, White must show that a manifest injustice resulted from the denial of the continuance. Lambert v. State, 654 So.2d 17, 22 (Miss.1995). We hold the trial court did not abuse its discretion in this instance.
¶ 18. The record shows that White's motion, filed June 3, 1996, only gave two reasons for the need of a continuance. White stated he had obtained co-counsel outside the State of Mississippi who would not be available on the date set for trial and who would need more time to prepare. White also stated he needed additional time to complete discovery and to consult or retain experts. At trial on June 25, 1996, White made a ore tenus motion for a continuance. White argued at trial that he had inquired about an additional attorney on June 24, 1996, and that any additional attorney would need time to become familiar with the case. White also stated he needed more time to locate and present witnesses which supported his case.
¶ 19. The trial judge's order denying White's written motion specifically states that White was afforded an initial appearance on March 8, 1996, at which time White said he would retain a lawyer. The trial judge noted that White was free on bond from March 19, 1996 to June 3, 1996, at which time White was convicted of possession of cocaine by the Federal District Court for the Northern District of Mississippi. The trial court also noted that White requested and received discovery on June 4, 1996. Furthermore, the trial judge noted that White never designated any expert witnesses nor stated what they may be expected to testify about. During trial, White only proffered three additional witnesses he claimed he needed for his defense. However, after a short recess White stated he needed only one of the witnesses. At the close of the State's case-in-chief, White indicated that he did not even need the one witness he had indicated earlier.
¶ 20. Under such circumstances, the trial judge did not abuse his discretion in denying the requests for continuance. The record demonstrates that White retained his own counsel who represented him at trial. Furthermore, White had adequate time to secure and hire additional counsel. White has made no showing that his trial counsel was not fully prepared for trial. White has failed to show that a manifest injustice resulted from denial of his motions for a continuance. This issue is without merit.
*959 ¶ 21. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I FOR POSSESSION OF COCAINE AND SENTENCE OF SIX YEARS AND FINE IN COUNT I OF $60,000; COUNT III FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS TO RUN CONSECUTIVELY WITH SENTENCE IN COUNT I AND FINE IN COUNT III OF $5,000, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SENTENCES TO RUN CONSECUTIVE TO TIME CURRENTLY SERVING IN FEDERAL PRISON, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, LEE, AND PAYNE, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.