# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 21, 2016        Decided August 26, 2016

No. 14-5257

ANTOINE JONES,
APPELLANT

v.

STEVE KIRCHNER, D.C. MPD DETECTIVE, ET AL.,
APPELLEES

Consolidated with 15-5088

Appeals from the United States District Court
for the District of Columbia
(No. 1:12-cv-01334)

*Anthony F. Shelley* argued the cause for appellant. With him on the briefs was *Andrew T. Wise*, *Kathleen T. Wach*, and *Arthur B. Spitzer*. *Adam W. Braskich* entered an appearance.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney. *Peter C. Pfaffenroth*, Assistant U.S. Attorney, entered an appearance.

Before: WILKINS, *Circuit Judge*, and GINSBURG and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

Opinion dissenting in part and concurring in the judgment in part filed by *Senior Circuit Judge* RANDOLPH.

GINSBURG, *Senior Circuit Judge*: Plaintiff Antoine Jones appeals the district court's order dismissing his *Bivens* and § 1983 claims against individual agents of the Federal Bureau of Investigation and a Metropolitan Police Department detective arising out of a search of his home and his coinciding arrest in 2005.[1]  For the following reasons, we affirm in part and reverse in part the order of the district court, and remand this matter to that court for further proceedings.

## I.   Background

During the course of a narcotics investigation, a federal magistrate judge in the District of Maryland signed a warrant to search Antoine Jones's home.   The magistrate struck language in the warrant form that would have permitted its execution without time restrictions, causing the warrant to read, in relevant part:

> YOU ARE HEREBY COMMANDED to search . . . the . . . place named above . . . serving this warrant and making the search (in the daytime – 6:00 A.M. to 10:00 P.M.)(at any

---

[1] The district court also dismissed additional claims against these and other defendants arising out of their search of an apartment and a warehouse owned by Jones and for attaching a GPS tracking device to his car, all without warrants.  Jones does not appeal those rulings.

~~time in the day or night as I find reasonable cause has been established)~~.[2]

According to the allegations in Jones's complaint, at 4:45 AM on October 24, 2005, one MPD detective and 11 FBI agents executed the search warrant and arrested Jones at gunpoint in his bedroom. *Jones v. Kirchner*, 66 F. Supp. 3d 237, 241 (D.D.C. 2014). During the course of the search, the officers seized 30 to 40 boxes of personal property. *Id.* Although Jones does not allege specifically what the boxes contained,[3] he does allege the "Defendants found no evidence of any crime at the [home]," and that the seizure therefore "unlawfully exceeded the scope of the warrant." Jones also alleges the officers broke into and entered his home "using an unauthorized key to gain entry," "without knocking and announcing" their presence, and without the justification of "exigent circumstances."

Jones has been incarcerated since his arrest. His first trial resulted in a hung jury and a mistrial. He was convicted after his second trial and sentenced to life in prison, but we overturned his conviction after concluding the Fourth Amendment prevented law enforcement officers from installing a GPS tracking device on Jones's car without a

---

[2] The warrant and warrant return are reproduced as an Appendix to this opinion.

[3] Jones received a warrant receipt listing what was taken from his home, but the descriptions are vague. *See* Warrant Return, Doc. No. 619-7 in *United States v. Jones*, No. 05-cr-386 (D.D.C. May 22, 2012). For example, Box # 22 is described as containing "Personal Papers in the name of A. Jones and Deniece Jones." Box # 16, meanwhile, is simply labelled "Misc. documents from Room H, large bureau."

warrant and using it to monitor his movements for 28 days. *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), *aff'd sub nom United States v. Jones*, 132 S. Ct. 945 (2012). Jones's third trial resulted in another hung jury, after which he pleaded guilty and was sentenced to 15 years in prison.

In this case, Jones alleges, among other things, that the failure of the police to knock and announce before entering, their seizure of the property contained in the boxes, and their nighttime execution of the search violated his rights under the Fourth Amendment to the Constitution of the United States. *See* Am. Compl. ¶¶ 57-61. Jones sought damages from the FBI agents pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and from the MPD officer pursuant to 42 U.S.C. § 1983. The Defendants filed a motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which motion the district court granted in full. *Jones*, 66 F. Supp. 3d 237.

The district court held that under the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Jones had failed to "plead sufficient facts to raise his allegations" of a knock-and-announce violation and an unlawful seizure "from possibility to plausibility! [sic]" *Id.* at 245. Specifically, because the complaint asserted Jones was upstairs at the time of the entry, the district court said it "may infer that Mr. Jones did not *hear* a knock and announce, but no more." *Id.* With respect to the seizure, the district court held the allegation was conclusory because the complaint "does not identify what property was seized, describe the scope of the [attached] warrant, nor allege how the seized items exceeded that scope." *Id.* at 246. The district court also held the Defendants were entitled to

qualified immunity for their nighttime execution of the search warrant.  Jones timely appealed.

## II.  Analysis

"We review *de novo* the district court's Rule 12(b)(6) dismissal" of Jones's claims, accepting all well-pleaded factual allegations of the complaint as true and drawing in Jones's favor all reasonable inferences from those allegations. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1128-29 (D.C. Cir. 2015).

### A.  Plausibility of Allegations

The Fourth Amendment requires law enforcement officers, before entering the premises to be searched, to announce their presence and provide residents an opportunity to open the door, *see Wilson v. Arkansas*, 514 U.S. 927, 931-32 (1995), except under exigent circumstances, *see Hudson v. Michigan*, 547 U.S. 586, 589-90 (2006).  The Amendment also requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized," which operates to "prevent[] the seizure of one thing under a warrant describing another."  *Marron v. United States*, 275 U.S. 192, 195-96 (1927).

Jones's complaint alleges the Defendants violated both these limitations.  A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).  As required by Federal Rule of Civil Procedure 8, the pleadings must "give the defendants fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotations and alterations omitted), but the Rule "does not require detailed

factual allegations," *Iqbal*, 556 U.S. at 678 (internal quotations omitted). The amended complaint easily meets these minimum requirements. Taking Jones's allegations as true for the purpose of passing upon a motion to dismiss, *see Twombly*, 550 U.S. at 555, he has made a *prima facie* showing the Defendants violated the Fourth Amendment.

Jones can try to prove the knock-and-announce violation by testifying that he did not hear a knock. If the Defendants did, in fact, knock, then they can so testify to refute Jones's claim. The task of resolving the conflicting accounts would fall to the finder of fact – judge or jury – who could decide how much weight to assign Jones's testimony after considering all relevant evidence, such as the distance between the bedroom and the front door and the volume of the alleged knock. Credibility determinations are not for the district court, especially at the motion to dismiss stage, before evidence is available and before the Defendants have even denied the allegations against them. *See Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 950 (D.C. Cir. 2013) (explaining that, at the motion to dismiss stage, the "court must assess the legal feasibility of the complaint, but may not weigh the evidence that might be offered to support it") (internal quotations and brackets omitted); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Iqbal*, 556 U.S. at 678 (The "plausibility standard is not akin to a probability requirement") (internal quotations omitted).[4]

---

[4] The Defendants also argue the knock-and-announce allegation must be dismissed because it is asserted against the officers collectively "for an alleged omission . . . by whoever was first to enter the residence." This is a frivolous argument. First, the order of entry is a fact unknowable by the plaintiff before discovery. Second, the defendants offer no authority holding or even

Jones's allegation of unlawful seizure is also plausible. Maybe all of the items in the 30 or more seized boxes fell within the scope of the search warrant, specified in Attachment A, Doc. No. 619-6 in *Jones*, 05-cr-386 (May 22, 2012). Maybe some or all of the items did not. The district court will ultimately make that determination. *Cf. United States v. Geraldo*, 271 F.3d 1112, 1118 (D.C. Cir. 2001). But Rule 8, which provides a complainant must make "a short and plain statement of the claim showing that the pleader is entitled to relief," did not require Jones, before discovery, to identify each seized item and document and to show that each fell outside the scope of the warrant.

### B. Statute of Limitations

There is no federal limitations period or tolling rule for actions brought under § 1983, so 42 U.S.C. § 1988, a companion statute that governs the rules of decision applicable to civil rights claims, directs federal courts to look to state law to fill the gap. *See Wilson v. Garcia*, 471 U.S. 261, 266-68 (1985); *see also Hardin v. Straub*, 490 U.S. 536, 539 (1989) (applying state rule tolling the limitations period for inmates in a § 1983 action); *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (applying the D.C. statute of limitations in a § 1983 action brought in D.C.); *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1114 (D.C. Cir. 1985) (applying the D.C. statute of limitations in a *Bivens* action brought in D.C.). The Defendants argue we should apply Maryland's three-year statute of limitations because it is the

---

suggesting that only the first officer to enter is liable for a knock-and-announce violation, nor any justification for deviating from the rule that "a jointly committed . . . tort may result in joint liability on the part of the tort-feasors." *Knell v. Feltman*, 174 F.2d 662, 663 n.1 (D.C. Cir. 1949).

state in which the search took place. The search occurred in 2005, so the limitations period would have lapsed by the time Jones filed his complaint in 2012.

We do not apply Maryland law in this case, however. Where federal law is silent, § 1988 provides, "the common law, as modified and changed by the constitution and statutes of *the State wherein the court having jurisdiction . . . is held*" shall govern unless application of the state law would be inconsistent with the laws of the United States. (emphasis added). *See also Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984) (explaining that, if no federal rule governs a claim asserted under the Civil Rights Acts, then courts are to consider application of the laws "of the forum state"). Because the District of Columbia is the forum "state" in this case, pursuant to § 1988, we look to District law for the applicable statute of limitations.

Quoting *Wallace v. Kato*, 549 U.S. 384 (2007), the Defendants argue we must look to "the law of the State in which the cause of action arose," but that dictum does not direct us to a different result. *Id.* at 387. In *Wallace*, the Supreme Court held that federal law, rather than state law, determines the accrual date of a § 1983 cause of action; which state's statute of limitations would have applied was not disputed.[5] In fact, until 2009 no court had ever considered

---

[5] Indeed, even if *Wallace* were controlling, it would still not be clear that the phrase "the State in which the cause of action arose" refers in this case to Maryland rather than to D.C. Other courts have cited *Wallace* for the proposition that "[c]laims under § 1983 are governed by the forum state's statute of limitations," *e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1194 n.2 (10th Cir. 2013), an interpretation probably attributable to the courts' imprecise usage of the phrase in § 1983 cases, *cf. Haggard v. Stevens*, 683 F.3d 714, 719 (6th Cir. 2012) (Clay, J., concurring).

"which statute of limitations is appropriate when the constitutional tort occurred in a state other than the forum of the litigation," *Malone v. Corrections Corp. of America*, 553 F.3d 540, 542 (7th Cir. 2009). In *Malone* the court imported the forum state's choice-of-law rules to determine which statute of limitations the forum state would apply. 553 F.3d at 542. This approach makes good sense because a state's "statute[] of limitations cannot be divorced from the [other] associated rules that determine how long a plaintiff has to commence suit." *Id.* at 542. Consulting the "D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore [ordinarily] mandate application of the District's own statute of limitations." *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).

Like Maryland, D.C. has a three-year statute of limitations for personal injury actions such as this. *See Earle*, 707 F.3d at 305 (citing D.C. Code § 12-301(8)). Unlike Maryland, however, the District tolls the statute of limitations for causes of action that accrue while a plaintiff is imprisoned, beginning at the time of his or her arrest. *District of Columbia v. Tinker*, 691 A.2d 57, 64 (D.C. 1997) (citing D.C. Code § 12-302(a)(3)). Tolling stops when the plaintiff is released, but Jones has been imprisoned since his arrest in 2005.[6]

---

[6] Contrary to our dissenting colleague's contention, *see* Dissent at 10 n.5, the pursuit of a uniform limitations period is not a valid reason to ignore the clear text of § 1988 and instead import a federal limitations period. "[T]he 'state-borrowing doctrine' may not be lightly abandoned," *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 357 (1991), particularly in a federal civil rights case, where the Supreme Court plainly envisions that different state legislatures will reasonably implement different

The Defendants nevertheless argue that tolling does not apply because the alleged knock-and-announce violation occurred immediately prior to Jones's arrest. If the Council of the District of Columbia did not require Jones to file his lawsuit from his jail cell, however, then it surely did not expect him to draft, file, and serve a complaint in the moments between the officers' entry into his home and his arrest. In *Rose v. Washington Times Co.*, 23 F.2d 993 (1928), the D.C. Court of Appeals interpreted an earlier statute that tolled a cause of action for libel during imprisonment. It explained:

> There can be no doubt that the word imprisonment is used in this section in its plain, ordinary meaning. Imprisonment is the act of putting or confining a man in prison; the restraint of a man's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion.

*Id.* at 994 (quoting *Hyde v. Nelson*, 229 S.W. 200, 201 (Mo. 1921)). From the moment the Defendants entered Jones's home, he was not free to leave. Although he had not yet been handcuffed or given Miranda warnings, his liberty was sufficiently restrained that he was 'imprisoned' for purposes of § 12-302(a)(3). The statute of limitations therefore has not yet begun to run on Jones's § 1983 or *Bivens*[7] claims.

---

statutes of limitations and tolling rules, *see Hardin*, 490 U.S. at 543-44.

[7] Although our limitations analysis focuses upon the § 1983 claims, the *Bivens* claims are governed by the same statute of limitations. *Bieneman v. City of Chi.*, 864 F.2d 463, 469 (7th Cir. 1988) ("Actions under § 1983 and those under [*Bivens*] are identical save for the replacement of a state actor (§ 1983) by a federal actor

## C. Issue Preclusion

The Defendants argue Jones is collaterally estopped from litigating the legality of the search and seizure because he raised these issues during the criminal proceeding as part of his motion to suppress. They also argue Jones's claims are barred by *Heck v. Humphrey*, in which the Supreme Court held a § 1983 complaint must be dismissed if a favorable judgment would necessarily impugn the validity of a prior conviction, unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. 477 (1994). We reject both arguments.

### 1. Collateral Estoppel

Citing *Allen v. McCurry*, the Defendants contend Jones's claims are barred because they had already been resolved by the district judge on Jones's motion to suppress. *See* 449 U.S. 90, 105 (1980) (Section 1983 claim for unlawful search barred by issue preclusion because the validity of the search had already been resolved in denying the motion to suppress). "[A]mong the most critical guarantees of fairness in applying collateral estoppel," however, "is the guarantee that the party to be estopped had not only a full and fair opportunity but an adequate incentive to litigate to the hilt the issues in question." *Haring v. Prosise*, 667 F.2d 1133, 1141 (4th Cir. 1981), *affirmed* 462 U.S. 306 (1983); *see generally*

---

(*Bivens*). No wonder the only . . . courts of appeals that have addressed questions concerning limitations under *Bivens* have held that the rules used for § 1983 suits will be applied in full force to *Bivens* cases"); *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995); *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *Chin v. Bowen*, 833 F.2d 21, 23-34 (2d Cir. 1987); *McSurley v. Hutchison*, 823 F.2d 1002, 1004-05 (6th Cir. 1987).

Restatement (Second) of Judgments (§§ 27-29 (1982)). Unlike the defendant in *McCurry*, Jones had little incentive to pursue further his motion to suppress because, whatever its merits, the remedy for the alleged constitutional violations at issue in this case probably would not have been suppression of the evidence seized at his home. *See Hudson*, 547 U.S. at 593 (rejecting suppression as a remedy when the causal connection between the discovery of the tainted evidence and the constitutional violation – in that case, failure to knock and announce – is remote). Collateral estoppel therefore does not apply.

Our dissenting colleague argues that Jones is barred from alleging the time of entry was 4:45 AM because on the motion to suppress, the district judge found the officers had entered after 6:00 AM. There are three problems with that argument. First, the Defendants never mention the factual finding that so animates the Dissent; after spending much of their brief arguing that the search as alleged would not have been unlawful, the Defendants said only that, "[h]aving litigated th[is] claim[] unsuccessfully in the criminal proceeding as part of a motion to suppress, Jones cannot now re-litigate [it] in a civil proceeding." Defs.' Br. 41. That will not do. "We apply forfeiture to unarticulated [legal and] evidentiary theories not only because judges are not like pigs, hunting for truffles buried in briefs or the record, but also because such a rule ensures fairness to both parties." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 137 (D.C. Cir. 2011) (internal citations and quotations omitted).

Second, Jones had no more incentive to appeal that finding than to appeal the conclusion that nighttime entry was not unlawful. As we have already explained, the remedy for the alleged violation likely would not have been suppression. Furthermore, any purported incentive to appeal the

suppression ruling, as Jones points out, would have been negated by Jones's subsequent guilty plea, which rested at least in part upon evidence that was not seized from his home. *See* Reply Br. 25-26.

Third, collateral estoppel is particularly inappropriate because the factual finding was not necessary to the district court's decision denying the motion. *See* Trial Transcript at 4, Doc. No. 70 in *Jones*, 05-cr-386 (Feb. 19, 2013) ("I've already ruled five times it's legally irrelevant. And I still stand by that. But to the extent I need to make findings of fact, I find that this search was executed after 6"); *see generally San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 n.16 (2005) (explaining that collateral estoppel applies only to "an issue of fact or law *necessary* to [the court's] judgment") (emphasis added).[8]

*Evanson v. United States*, 84 F.3d 1452 (D.C. Cir. 1995), *aff'g* 878 F. Supp. 1 (D.D.C. 1995), upon which the Dissent (at 4-5) relies, is an unpublished summary affirmance that has nothing to do with case at hand. The alleged constitutional violations in *Evanson* were very different: they concerned whether the officers' entry was consensual and whether the

---

[8] We do not hold, as the Dissent claims, that neither of two alternative bases for a holding can estop a party from re-litigating an issue in a future action. We simply note that, where a district court has explicitly characterized a factual finding as "legally irrelevant," it is fair to say that particular finding was not "necessary" to the court's judgment. *Cf. Halpern v. Schwartz*, 426 F.2d 102, 105 (2d Cir. 1970) ("It is well established that although an issue was fully litigated and a finding on the issue was made in the prior litigation, the prior judgment will not foreclose reconsideration of the same issue if that issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment").

arrest was supported by probable cause. But even if the allegations had been identical, Evanson would have had an incentive to appeal because the Supreme Court had not yet decided *Hudson*. Further, the district court in *Evanson* noted multiple times that an issue must be "necessary" to a judgment for estoppel to apply. 878 F. Supp. at 3. As we have explained, that was not the case here.

## 2. *Heck v. Humphrey*

*Heck v. Humphrey* is no bar to Jones's claims. Jones's first conviction was vacated. *Maynard*, 615 F.3d at 549. His current conviction rests upon his guilty plea, and "when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by [his proving] an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Prosise*, 462 U.S. at 321. Further, because the remedy for the alleged violations likely would not have been suppression, a favorable ruling in this civil suit would not necessarily impugn Jones's conviction even if he had not pled guilty. *See Heck*, 512 U.S. at 487 n.7 ("Because of doctrines like . . . harmless error, . . . a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful").

## D. Qualified Immunity for the Timing of the Search

The district court dismissed Jones's claim regarding the execution of the search warrant at 4:45 AM on the ground that the officers are entitled to qualified immunity, the doctrine that "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*,

555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity depends upon the answers to two questions: (1) Did the officer's conduct violate a constitutional or statutory right? If so, (2) was that right clearly established at the time of the violation? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A right is "clearly established" if precedent from a controlling authority or "a robust consensus of cases of persuasive authority" put the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). In this case, the district court held that there was no Fourth Amendment violation because the "Fourth Amendment does not per se prohibit nighttime searches," 66 F. Supp. 3d at 246 (citing *Youngbey v. March*, 676 F.3d 1114, 1124 (D.C. Cir. 2012)), and that, in any event, Jones "cites to no cases in the Supreme Court or [the D.C.] Circuit clearly establishing that entry under the circumstances alleged" here was unconstitutional, *id.*

The district court erred in holding there was no constitutional violation. Jones does not allege the timing of the search was unlawful merely because it took place at night; he alleges it was unlawful because it violated an express limitation on the face of the warrant.

The Fourth Amendment "guarantees . . . the absolute right to be free from unreasonable searches and seizures." *Bivens*, 403 U.S. at 392. The search of a home is presumptively unreasonable unless authorized by a warrant, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), which must be issued by a neutral judicial officer, *see Johnson v. United States*, 333 U.S. 10, 13-14 (1948). Unlike rules of criminal procedure and other sub-constitutional bodies of law, violations of which may be unlawful but are not necessarily unconstitutional, *see Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("[W]hile States are free to

regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections"), compliance with the limitations of a warrant is required by the Constitution itself, *Bivens*, 403 U.S. at 394-95 n.7 ("[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant").

In this case the magistrate, as clearly indicated on the face of the warrant, affirmatively denied the Defendants permission to search Jones's house before 6:00 AM. The plaintiff alleges the Defendants nonetheless executed the warrant at 4:45 AM. Just as a warrant is "dead," and a search undertaken pursuant to that warrant invalid, after the expiration date on the warrant, *Sgro v. United States*, 287 U.S. 206, 212 (1932), a warrant is not yet alive, and a search is likewise invalid, if executed before the time authorized in the warrant. If the Defendants executed the warrant when the magistrate said they could not, then they exceeded the authorization of the warrant and, accordingly, violated the Fourth Amendment.[9]

In holding the alleged nighttime entry violated the Fourth Amendment, we reject the Defendants' argument that 21 U.S.C. § 879 overrode the time restrictions imposed by the magistrate. That statute, which governs searches for evidence of drug crimes, provides that a warrant "may be served at any

---

[9] Our dissenting colleague says that when a "*state* warrant authorized only a daytime search but the officers executed the warrant at night," courts have held there is no Fourth Amendment violation. Dissent at 14 n. 7 (emphasis added) (citations omitted). That mischaracterizes the cases. In each one, the warrant itself was silent as to timing; any time restrictions derived from a state statute or rule of criminal procedure, which are not incorporated by the Fourth Amendment.

time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time."  Unlike Federal Rule of Criminal Procedure 41, which governs most searches and requires an officer to demonstrate "good cause" before a magistrate can authorize a nighttime search, § 879 "requires no special showing for a nighttime search" beyond probable cause for the warrant itself. *Gooding v. United States*, 416 U.S. 430, 458 (1974).  Although this and other courts have held a warrant issued pursuant to § 879 that is silent as to time may permissibly be executed at night, *see, e.g.*, *United States v. Burch*, 156 F.3d 1315, 1325 (D.C. Cir. 1998), nothing in the text of § 879 suggests it limits a magistrate's discretion to place restrictions upon a search.

Indeed, a statute purporting to restrict the power of a court to define the limits of a reasonable search would raise a serious constitutional question.  *Cf. Dickerson v. United States*, 530 U.S. 428, 437 (2000) ("Congress may not legislatively supersede our decisions interpreting and applying the Constitution").[10]  We need not resolve that question here, however, because regardless whether the magistrate should have permitted a nighttime search in this case, he did not.  The warrant requirement "provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive

---

[10] Our dissenting colleague contends that Rule 41(a)(2)(B) and (e)(2) impose just such restrictions.  They do not.  The rules merely prevent a magistrate from authorizing a search that fails to meet certain minimum requirements; they do not purport to require a magistrate to authorize a search he has otherwise deemed unreasonable.

enterprise of ferreting out crime." *United States v. Leon*, 468 U.S. 897, 913-14 (1984) (internal quotations omitted). If the executing officers believed the daytime-only limitation was an improvident limitation or, as in *United States v. Katoa*, 379 F.3d 1203 (10th Cir. 2004), a mere drafting error, then they had other options, including telephoning the magistrate to authorize nighttime service, as the officers did in *Katoa*. *See also United States v. Voustianiouk*, 685 F.3d 206, 216 (2d Cir. 2012) (explaining that a search of a second-floor apartment violated the Fourth Amendment where the warrant authorized a search of the first-floor apartment only and the officers "could have called a magistrate judge on the telephone" on the morning of the search after discovering the suspect resided on the second floor). Simply ignoring the timing limitation was not among the choices lawfully available to the officers in this case.

Nevertheless, we agree with the district court that the Defendants are entitled to qualified immunity, albeit for a different reason: It was not clearly established in Maryland in 2005 that the Fourth Amendment prohibits the nighttime execution of a daytime-only warrant. Although two of our sister circuits had by then so held, s*ee O'Rourke v. City of Norman*, 875 F.2d 1465 (10th Cir. 1989); *United States v. Merritt*, 293 F.2d 742 (3d Cir. 1961), the Fourth Circuit, within which this search occurred, did not come to the same conclusion until after the search in this case. *See Yanez-Marquez v. Lynch*, 789 F.3d 434, 466 (2015). Indeed, as the Fourth Circuit noted in that case, an unpublished Fourth Circuit opinion from 2009 had treated "a nighttime search under the aegis of a daytime warrant as a mere Rule 41 violation, rather than as an unconstitutional search." *Id.* at 467 (discussing *United States v. Davis*, 313 F. App'x 672). To repeat, qualified immunity shields an officer from liability unless he reasonably should have known his conduct would

violate the law. *See Pearson*, 555 U.S. at 231. If our learned colleagues on the Fourth Circuit believed as recently as 2009 that the nighttime execution of a daytime-only warrant is not a constitutional violation, then the police officers who work in that jurisdiction cannot be faulted for failing to appreciate in 2005 that their conduct was unconstitutional.

Until 2009 the Supreme Court "required courts considering qualified immunity claims to first address the constitutional question, so as to promote 'the law's elaboration from case to case.'" *Camreta v. Greene*, 563 U.S. 692, 707 (2011) (emphasis omitted) (quoting *Saucier v. Katz*, 553 U.S. 194, 201 (2001)).[11] Today, which part of the qualified immunity analysis to address first is within the "sound discretion" of the court. *Pearson*, 555 U.S. at 236. Where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," it may make sense to avoid the constitutional question. *Id.* at 237. This is not such a case, however. It seems to us an unremarkable proposition that an officer must respect a time limitation imposed by a magistrate and, indeed, the three other circuits to consider the question reached the same conclusion. In light of the Government's argument to the contrary, *see* Defs.' Br. 36, we think it important to clarify this point of law.

---

[11] Our resolution of the constitutional question, although not necessary to the grant of qualified immunity, is "*not* mere dictum in the ordinary sense." *Bunting v. Mellen*, 541 U.S. 1019, 1023 (2004) (Scalia, J., dissenting from denial of certiorari). Such rulings "have a significant future effect on the conduct of public officials . . . and the policies of the government units to which they belong. And more: they are rulings self-consciously designed to produce this effect, by establishing controlling law and preventing invocations of immunity in later cases." *Camreta*, 563 U.S. at 704-05 (internal quotations and citations omitted).

Since *Pearson*, our court has often granted qualified immunity without reaching the constitutional question, but both the constitutional question and the answer are more clear in this case than in any of those. Here we need only follow the teaching of the Supreme Court, as have three other circuits, in order to protect the public from a particular type of unreasonable search. One of those circuits – the Fourth – surrounds the District of Columbia on all sides, and officers from Maryland and Virginia frequently cooperate with officers from D.C. on investigations. Resolving the constitutional question here ensures that officers will take care to abide by a magistrate's limitations regardless where in the Washington area the search is executed.

Conservation of judicial resources, *see* Dissent at 11, is a risible justification for avoiding a straightforward question such as this, *cf. Pearson*, 555 U.S. at 236 ("there are cases in which there would be little if any conservation of judicial resources to be had by beginning and ending with a discussion of the 'clearly established' prong"), especially in view of the dramatic reduction in the caseload per judge of our court in recent years. Nor is doubt about the actual time of entry a relevant consideration in this case. That the facts of the case are as yet unsettled is neither surprising nor unique; this appeal is from the grant of a pre-answer motion to dismiss. There is nothing improper about deciding a constitutional question at this stage. *Cf. al-Kidd*, 563 U.S. at 734. Indeed, we ordinarily decide questions of qualified immunity early in order to avoid burdening officers with protracted litigation, *see Pearson*, 555 U.S. at 232; under our dissenting colleague's approach, in contrast, we would never reach a constitutional question as long as the defendant's attorney remembered to raise qualified immunity as a defense. Although well-founded doubt about the veracity of a

plaintiff's factual allegations might steer us toward constitutional avoidance in some circumstances (*e.g.*, where the plaintiff's account of the facts on summary judgment is "utterly discredited by the clear [video] evidence," *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015)), those circumstances are not present here, where the Defendants have not submitted contrary evidence nor even filed an answer denying Jones's allegations.[12]

As the Supreme Court has warned, perpetually addressing only the clearly-established question "may frustrate the development of constitutional precedent and the promotion of law-abiding behavior." *Camreta*, 563 U.S. at 706 (internal quotations omitted). We see no need to avoid the constitutional question here.

## III. Conclusion

We affirm the district court's holding that the Defendants have qualified immunity for the timing of the search, reverse its dismissal of Jones's claims for unlawful seizure and no-knock entry, and remand this matter for further proceedings consistent with this opinion.

*So ordered.*

---

[12] Had they wanted to do so at this early stage of the litigation, the defendants could have submitted affidavits denying that they entered the plaintiff's home before 6:00 a.m. Rule 12(d) allows a party to convert a motion to dismiss into one for summary judgment by submitting extrinsic materials with the motion. *See also Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).

**Appendix A**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**SEARCH WARRANT**

10870 Moore Street
Waldorf, MD

CASE NUMBER: 05-4491 CBD

TO: Special Agent Stephanie Yanta and any Authorized Officer of the United States

Affidavit(s) having been made before me by Special Agent Stephanie Yanta who has reason to believe that
☐ on the person or ☒ on the premises known as (name, description and or location)

A brick single family house with the numbers "10870" on the mailbox post to the right of the driveway

in the District of Maryland, there is now concealed a certain person or property, namely (describe the person or property)

See Attachment A

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before ~~October 31, 2005~~
Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) ~~at any time in the day or night as I find reasonable cause has been established~~ and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the Honorable Charles B. Day, U.S. Magistrate Judge, as required by law.

October 22, 2005 at Greenbelt, Maryland
Date and Time Issued

5:53 PM

Charles B. Day
United States Magistrate Judge
Signature of Judicial Officer

| RETURN | | CASE NUMBER: |
|---|---|---|
| DATE WARRANT RECEIVED 10/22/05 | DATE AND TIME WARRANT EXECUTED 10/24/05 6:15 AM | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH DeNiece Jones |

INVENTORY MADE IN THE PRESENCE OF
NAUGLE, Stephen R.

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

See attached 597's (Receipt of Property Seized)

**CERTIFICATION**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_Atlanta_

Subscribed, sworn to, and returned before me this date.

_Paul R. Day_          11/8/05

U.S Judge or Magistrate          Date

RANDOLPH, *Senior Circuit Judge*, dissenting in part and concurring in the judgment in part:

There are two basic and related reasons why I believe the majority errs in deciding that the defendants violated the Fourth Amendment when they allegedly executed a daytime search warrant at night. The first reason should have been conclusive. It is that collateral estoppel bars Jones' claim about the timing of the search. In the criminal proceedings leading to Jones' conviction that very issue was decided against him, not once but several times, because his allegation turned out to be false. The second reason is that the majority's determination to reach out and decide this constitutional issue despite that finding and despite the defendants' immunity from suit is an abuse of discretion.

All that is before us in this case is Jones' complaint, the fourth civil suit he has filed during his imprisonment on a plea of guilty for drug dealing. His latest action alleges that more than a decade ago officers began searching his home at 4:45 a.m. although the search warrant authorized a search only between 6:00 a.m. and 10:00 p.m. and that the defendant officers therefore violated the Fourth Amendment to the Constitution.

In order to reach this constitutional issue, the majority opinion decides two new and significant points of law for this circuit: that alternative holdings do not give rise to collateral estoppel and that suppression is not the proper remedy for violation of a warrant's timing requirement. Jones raised neither of these issues in this court or in the district court, and yet the majority opinion decides both of them in order to reach a constitutional question that is irrelevant to the disposition of this case because of the defendants' immunity.

In coming to these conclusions, the majority opinion also assumes the truth of Jones' allegation. Yet in the criminal proceedings against Jones, the district court made an evidentiary

finding that Jones' allegation was false and that the search actually occurred after 6:00 a.m.

The search of Jones' home was part of a coordinated take-down on the morning of October 24, 2005, in which FBI, Metro Police, and other officers simultaneously searched several different properties. More than half a dozen officers – including defendants in this case – testified that at 6:00 a.m., the FBI command center sent out the signal for all teams to execute their warrants. At Jones' Moore Street house, Agent Steven Naugle – a defendant in this case – was team leader. Agent Naugle testified that the call "went out over the radio . . . at 6:00 a.m. to execute our search warrants." Trial Transcript at 41, No. 1:05-cr-00386-ESH (Feb. 11, 2013), ECF No. 739. The team, which had been parked at a nearby shopping center, drove to Jones' house and entered at approximately 6:15 a.m. *Id.* at 41, 75.

In his initial motion to suppress, Jones did not mention the timing of the search. He later filed two "Motion[s] for Reconsideration" of the motion to suppress, in which he raised the issue. Attached to his motions were affidavits from his wife and son claiming that agents had entered his home at 4:45 a.m. *See* Motion for Reconsideration, No. 1:05-cr-00386-ESH (D.D.C. May 22, 2012), ECF No. 619-3, No. 619-4, No. 619-5; Motion to Reconsider at 34-44, No. 1:05-cr-00386-ESH (D.D.C. Feb. 19, 2013), ECF No. 688. Judge Huvelle denied the first motion in an oral bench ruling, stating that even if Jones had a right to have the warrant executed at 6:00 a.m. rather than 4:45 a.m., "the remedy would not be suppression." Trial Transcript at 11, No. 1:05-cr-00386-ESH (D.D.C. Aug. 10, 2012), ECF No. 670-5. She denied the second motion in a minute order, which stated that the motion was "denied for the reasons stated on the record in open[] court." Minute Entry, No. 1:05-cr-00386-ESH (D.D.C. Feb. 19, 2013).

In giving those reasons, Judge Huvelle made a specific factual finding that the search occurred after 6:00 a.m. Trial Transcript at 3–4, No. 1:05-cr-00386-ESH (D.D.C. Feb. 19, 2013), ECF No. 780. Here is what she said from the bench:

> I credit the testimony of Naugle and the many, many, many other police officers, all of whom got the go-ahead to start at 6 a.m.

> I'm telling you that police do not – they go at the same time. It will undercut the whole purpose of executing a search warrant if half of them go at one time and half go at another time.

> The testimony is absolutely consistent. We heard from Naugle that he went in to the Moore Street house at 6 a.m. or shortly thereafter, consistent with Magistrate Judge Charles Day's order. And we find that – listening to the testimony we know from the people who executed the warrant at the co-conspirator's house from Detective Webb, he testified; Ashby testified; somebody testified with respect to Demetrius Johnson's. Ms. Counts, special agent now retired Counts, testified; Norma Horne testified; and Detective Kirschner [sic] testified.

> There's consistent testimony that they went in at 6:00 when they got the word. Or after 6:00. So I find no basis to credit Ms. Jones's testimony. I find the police officers to be totally consistent. I've already ruled five times it's legally irrelevant. And I still stand by that. But to the extent I need to make findings of fact, I find that this search was executed after 6 when command center gave the go-ahead to all these officers to take down this conspiracy.

The warrant itself, now reproduced in its entirety as an addendum to the majority opinion, corroborates Judge Huvelle's finding. On page two of the warrant, under the heading "DATE AND TIME EXECUTED," is the notation "10/24/05 6:15 AM." This statement deserves great weight not only because it was made contemporaneously but also because it was made in compliance with Rule 41(f)(1)(A) of the Federal Rules of Criminal Procedure[1]: "The officer executing the warrant must enter on it the exact date and time it was executed."

Under *Allen v. McCurry*, 449 U.S. 90, 94 (1980), rulings on motions to suppress have preclusive effect in later civil suits. *See McClam v. Barry*, 697 F.2d 366, 371 n.3 (D.C. Cir. 1983) ("[C]ollateral estoppel should apply in *Bivens*-type actions as it applies in section 1983 actions.")*, overruled on other grounds by Brown v. United States*, 742 F.2d 1498 (D.C. Cir. 1984). Jones has already litigated the issue about the timing of the search, and he has lost.

This collateral estoppel issue has already been decided in this circuit as a matter of federal law.[2] *Evanson v. United States*,

---

[1] On page 17 of the majority opinion there is, as an aside, the statement that a statute restricting a federal court's definition of the limits of a reasonable search "would raise a serious constitutional question." This ill-considered dictum is troublesome. Rule 41(a)(2)(B) and (e)(2), for example, restrict the discretion of magistrates to determine the limits of a reasonable search, with the federal rules defining night and day without regard to seasons or time zones. The notion that those provisions might be unconstitutional strikes me as far-fetched.

[2] Many other courts have come to the same conclusion on state law grounds. *See United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265 (2d Cir. 1975) (Friendly, J.); *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997); *Simmons v. O'Brien*, 77 F.3d 1093, 1096–97

84 F.3d 1452 (D.C. Cir. 1995), *aff'g* 878 F. Supp. 1 (D.D.C. 1995), was a civil damage action like this case alleging a violation of the Fourth Amendment. The plaintiff in *Evanson* had been convicted of gun crimes in federal court. He declined to appeal his conviction and then filed a *Bivens* suit against several of the federal officers who took part in the search. Judge Friedman ruled that the plaintiff was collaterally estopped from contesting the constitutionality of the search because "[a]t the suppression hearing [in federal court in his criminal case], at which he was represented by counsel, plaintiff had a full and fair opportunity to litigate the Fourth Amendment issues he presented." *Id.* at 3. We summarily affirmed, finding that "[t]he merits . . . are so clear as to warrant summary action." 84 F.3d 1452; *see also Paolone v. Mueller*, No. CIV A. 05-2300 (JDB), 2006 WL 2346448, at *6 (D.D.C. Aug. 11, 2006).

The majority opinion claims that *Evanson* is distinguishable because the issue there was "necessary" to the judgment. Maj. Op. at 14. In the majority's view, Judge Huvelle's factual finding about the timing of the search was not necessary to resolve the motion to suppress because it was an alternative ruling. But the traditional rule, and the one most courts of appeals follow, is that "an alternative ground upon which a decision is based should be regarded as 'necessary' for purposes of . . . res judicata or collateral estoppel . . .." *Winters v. Lavine*, 574 F.2d 46, 67 (2d Cir.1978); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 254 (3d Cir. 2006); *Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d

(8th Cir. 1996); *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990); *Rowley v. Morant*, 631 F. App'x 651, 654 (10th Cir. 2015); *but see Heath v. Cast*, 813 F.2d 254, 258 (9th Cir. 1987). *See generally* Diane M. Allen, *Res Judicata or Collateral Estoppel Effect of Prior Criminal Proceedings*, 68 A.L.R. Fᴇᴅ. 861 (1984) (collecting cases).

1396, 1402 (7th Cir. 1987); *In re Westgate-California Corp.*, 642 F.2d 1174, 1176–77 (9th Cir. 1981); *Deweese v. Town of Palm Beach*, 688 F.2d 731, 734 (11th Cir.1982); RESTATEMENT (FIRST) OF JUDGMENTS § 68 comment n (1942).

The point of the "necessarily decided" prong of the collateral estoppel inquiry is that a finding should have preclusive effect only when the court making it took "sufficient care in determining [the] issue" and when "appellate review is available to ensure the quality of the initial decision." 18 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4421 (2d ed. 2002). Both of those requirements are met here. Judge Huvelle carefully considered the question – indeed, considered it several times – and her findings against Jones were detailed, well-reasoned, solid and irrefutable. No wonder that Jones decided not to appeal her ruling even though he had several chances. He could have done so either by not pleading guilty or by entering a conditional guilty plea that would have allowed him to appeal Judge Huvelle's ruling against him. *See* FED. R. CRIM. P. 11(a)(2). Jones undoubtedly knew this. He had already taken several appeals on other matters, one of which resulted in the Supreme Court reversing his conviction. Jones had a "full and fair opportunity" to litigate and appeal the timing of the search in his suppression motion. *Allen*, 449 U.S. at 95. It was his choice to plead guilty and cut that opportunity short, just as it was the plaintiff's choice in *Evanson* not to appeal his conviction.

Jones never argued that Judge Huvelle's factual finding was not necessary to resolving his motion to suppress. But the majority raises the argument anyway, and then decides with no analysis that alternative holdings do not have preclusive effect. I would not make new law based on arguments that the plaintiff never made, especially if that ruling conflicted with the decisions of other circuits.

Nor is this the only issue on which the majority invokes arguments that Jones never made. The opinion also states that collateral estoppel does not apply because Jones had no incentive to appeal Judge Huvelle's ruling. Why not? Because even if Jones won on appeal, the remedy "probably would not have been suppression." Maj. Op. at 12. Notice that this is an assertion about what Jones and his attorney were thinking at the time. And how does the majority gain this insight? Jones never even alleged, let alone argued, in his brief or in his reply brief, that he thought a victory on appeal would not have resulted in suppression[3]. The majority has simply made up this version of Jones' trial strategy, and has used it as the basis for making new law on an issue that was never presented in this case.

---

[3] One might also wonder how the majority can be so sure that suppression would not have resulted if the search actually began before 6 a.m. The majority opinion cites three circuit court decisions holding that executing a daytime warrant at night violated the Fourth Amendment. *See* Maj. Op. at 18 (citing *O'Rourke v. City of Norman*, 875 F.2d 1465 (10th Cir. 1989); *United States v. Merritt*, 293 F.2d 742 (3d Cir. 1961); *Yanez-Marquez v. Lynch*, 789 F.3d 434 (4th Cir. 2015)). Of these three cases, one – *O'Rourke* – did not even deal with suppression of evidence; like this case, it was an action for damages. The two other cases recognized that suppression was a proper remedy. In *Merritt*, the Third Circuit case, the court held that the district court should have suppressed the evidence. In *Yanez-Marquez* the Fourth Circuit held that suppression was available as a remedy if the constitutional violation was "egregious." 789 F.3d at 467–69. (This was a civil deportation case, not a criminal proceeding, and the Fourth Circuit determined that under *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), the exclusionary rule therefore could be invoked only for egregious constitutional transgressions. 789 F.3d at 447–51.). The majority's decision that suppression is not available in such cases may therefore put us in conflict with the Fourth Circuit.

Ironically, even though it makes new law on two issues that Jones never raised, the majority opinion tries to avoid the preclusive effect of Judge Huvelle's factual findings with the astonishing assertion that the defendants have forfeited the argument. Maj. Op. at 12. The assertion is astonishing because the defendants clearly and forcefully made the argument, both here and in the district court. More than that, Jones – in his reply brief – responded to their argument. Here is a sample from the defendants' brief: "Jones previously litigated . . . the timing of the search in his criminal proceeding . . .. Having already litigated these claims unsuccessfully in the criminal proceeding as part of a motion to suppress, Jones cannot now re-litigate them in a civil proceeding under *Bivens* or section 1983." Appellees' Brief 41. In reply, Jones acknowledged that Judge Huvelle found "that the search occurred within the warrant's terms. Tr. of Proceedings Held Feb. 19, 2013, ECF 780 at 4." Jones Reply Brief 24. Jones' citation is to the very portion of Judge Huvelle's ruling I quoted above.

Now to the arguments Jones actually made. In attempting to ward off collateral estoppel, Jones' only claim is that after he pled guilty, he lacked an "adequate incentive to litigate" or appeal those issues. Appellant Reply Br. 25. For that proposition he cites *Haring v. Prosise*, 462 U.S. 306 (1983), but the portion of *Haring* he cites is not a holding. It is instead a summary of the holding of the lower court.[4] 462 U.S. at 311. (The majority opinion repeats Jones' mistake. Maj. Op. at 11–12). Additionally, whatever incentive Jones had was

---

[4] The substance of *Haring* does not help him either. That case held only that criminal defendants are not estopped from contesting issues that they *could have*, but did not, raise in a motion to suppress during their criminal proceedings. 462 U.S. at 318. *Haring* did not address what happens when the defendant *does* raise the issue in a motion to suppress and the court rules against him.

obviously enough – he repeatedly litigated the issue before the district court in the criminal case, even after the court told him to stop. Trial Transcript at 5, No. 1:05-cr-00386-ESH (D.D.C. Aug. 10, 2012), ECF No. 670-5 ("[E]very one of [the motions] I ruled on before. I am not going to reverse myself. They are the law of the case."); Trial Transcript at 3–4, No. 1:05-cr-00386-ESH (Feb. 19, 2013), ECF No. 780 ("I've already ruled five times . . ..").

Jones also seeks to derive this requirement of an "adequate incentive to litigate" from the broader principle that courts should not estop defendants if doing so would "work a basic unfairness." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007). Bringing "fairness" into the mix does not help him. He has already been involved in four criminal trials and several civil complaints, and he has raised this issue multiple times. He has managed to spin this single, baseless allegation into a large expenditure of judicial and attorney resources. Jones had his day in court, in fact more than a day, and there is nothing unfair in denying him still another.

Jones cites three cases in which he claims criminal defendants were not estopped in "analogous circumstances" because they lacked adequate incentive to litigate or appeal issues decided in a criminal case. *Talarico v. Dunlap*, 685 N.E.2d 325, 332 (Ill. 1997); *Johnson v. Watkins*, 101 F.3d 792, 796 (2d Cir. 1996); *United States v. Levasseur*, 699 F. Supp. 965, 981 (D. Mass.1988), *rev'd in part on other grounds*, 846 F.2d 786 (1st Cir. 1988). The first case did not involve a motion to suppress. *Talarico*, 177 Ill.2d at 196. And in the other two cases, the defendants could not appeal because they had either been acquitted or granted a mistrial, not because they had pled guilty. *Johnson*, 101 F.3d at 796; *Levasseur*, 699 F. Supp. at 971; *compare Jenkins v. City of New York*, 478 F.3d 76, 91–92 (2d Cir. 2007); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1020–23 (7th Cir. 2006); *Dixon v. Richer*, 922 F.2d 1456, 1459

(10th Cir. 1991). That is a crucial difference. When a defendant is acquitted, neither he nor the government can appeal the decision. *See Martinez v. Hooker*, 601 F. App'x 644, 648–49 (10th Cir. 2015). In contrast, here Jones had the opportunity to go to trial and appeal if he was convicted; he simply decided he would rather plead guilty.

The short of the matter is that the Fourth Amendment issue regarding the timing of the search is not presented in this case and the majority opinion erred in deciding that issue.[5]

---

[5] I also have doubts about the majority's analysis of the statute of limitations question. There are twelve defendants in this case. Eleven of them are or were FBI agents. The action against them rests not on a federal statute but, under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), directly on the Fourth Amendment. The majority opinion borrows the limitations period of the District of Columbia. Although the search, and thus the cause of action, arose in Maryland, the majority rejects as "dictum" Justice Scalia's statement for the Court in *Wallace v. Kato*, 549 U.S. 384, 387 (2007), that in § 1983 actions the limitation statute of the state in which the cause of action arose controls. Maj. Op. at 8.

But there is now an analogous federal limitations statute – 28 U.S.C. § 1658, which provides a four year period without any tolling provision like the District of Columbia's. (Section1658 applies only by analogy because it governs causes of action under statutes enacted after December 1, 1990.) The Supreme Court has recognized that in the interest of uniformity and in light of the potential multi-state geographic nature of some federal actions, the courts should adopt an analogous federal limitations period rather than a state law, which itself would apply only by analogy. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 357 (1991); 19 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4519 (2d ed.).

11

Even if Judge Huvelle's rulings did not preclude Jones from raising the same issues in a civil lawsuit, there is no good reason to decide whether the search in this case violated the Fourth Amendment.  I would hold that because the officers did not violate a clearly established right they had qualified immunity from Jones' suit  and be done with it.  In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court reversed its decision in *Saucier v. Katz*, 533 U.S. 194 (2001), and held that although courts may decide constitutional questions in qualified immunity cases, it is often unwise to expend "scarce judicial resources on difficult questions that have no effect on the outcome . . .."  555 U.S. at 236–37.

Ever since *Pearson*, this court has developed not a page, but a volume of history following the Supreme Court's decision.  In these cases, we have almost invariably declined to decide constitutional questions in qualified immunity cases when it was unnecessary to do so.  The majority has made no attempt to distinguish the cases embodying our established practice.  *See Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015); *Fenwick v.*

The majority objects that this is not "a valid reason to ignore the clear text of § 1988."  Maj. Op. at 9 n.6.  But the "clear text" of § 1988 refers to "the common law, as modified and changed by the constitution and statutes of the *State*" where the court sits.  42 U.S.C. § 1988(a) (emphasis added).  It makes no mention of the District of Columbia.  The Supreme Court has held that similar – indeed, even broader – language originally in 42 U.S.C. § 1983 did not apply to the District of Columbia.  *See District of Columbia v. Carter*, 409 U.S. 418, 432 (1973)*.*  In response to that case, Congress amended § 1983 to cover the District of Columbia.  *See* Pub. L. No. 96–170, 93 Stat. 1284 (1979).  Congress has never made such a change to § 1988.

The problem is that the defendants did not make this argument or anything like it.

*Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015); *Dukore v. District of Columbia*, 799 F.3d 1137, 1144 (D.C. Cir. 2015); *Fox v. District of Columbia*, 794 F.3d 25, 29 (D.C. Cir. 2015); *Bamdad v. DEA*, 617 F. App'x 7, 8 (D.C. Cir. 2015); *Doe v. District of Columbia*, 796 F.3d 96, 105 (D.C. Cir. 2015); *Mpoy v. Rhee*, 758 F.3d 285, 295 (D.C. Cir. 2014); *Atherton v. D.C. Office of Mayor*, 706 F.3d 512, 515 (D.C. Cir. 2013); *Johnson v. District of Columbia*, 734 F.3d 1194, 1202 (D.C. Cir. 2013); *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012); *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011), *as amended* (Mar. 29, 2011); *Jones v. Horne*, 634 F.3d 588, 597, 599 (D.C. Cir. 2011); *Ali v. Rumsfeld*, 649 F.3d 762, 773 (D.C. Cir. 2011); *Rasul v. Myers*, 563 F.3d 527, 530 (D.C. Cir. 2009). It is no answer to say that this is a matter within the court's discretion. In the words of Chief Justice Marshall, "This is true. But a motion to [the court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F. Cas. 30, 35 (C.C.D. Va. 1807). The nearly uniform practice of this court has established such sound legal principles, and the majority has offered no reason to depart from them.

I repeat that we are deciding this case on a complaint alone. The defendant officers have yet to file their answer to the complaint. As the Supreme Court recognized in *Pearson*, courts should not proceed to a constitutional question if the answer depends on undeveloped facts. 555 U.S. at 239. Still less should a court decide a constitutional question when developed facts show that the question is not presented. The evidence in the criminal proceedings proved that the search of Jones' premises eleven years ago complied with the warrant's timing requirement. *Compare Bradley v. Reno*, 749 F.3d 553, 558 (6th Cir. 2014) ("[I]n gauging the reasonableness of an officer's acts, a . . . court should of course consider what a . . . trial court thought of them.").

Judge Leval has explained that when a case can easily be decided on the "clearly established" prong alone, "neither the judge nor the defendant has any practical interest in the theoretical question of constitutionality.  Both know it can have no effect on the inevitable dismissal of the case."  Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. REV. 1249, 1278 (2006); *see also Pearson*, 555 U.S. at 234, 239–40 (discussing Judge Leval's article).   The defendants in this case have won a dismissal on this Fourth Amendment issue; they have no reason to seek rehearing en banc or certiorari in the Supreme Court on that issue.  *See Lyons v. City of Xenia*, 417 F.3d 565, 582 (6th Cir. 2005) (Sutton, J., concurring).[6]

The answer to the constitutional question here is by no means certain[7].  And it is hardly pressing.  The majority cites not

_____

[6] Given our unanimous ruling that the defendants have qualified immunity, we could not send the case back to the district court for still another evidentiary hearing on the timing question, a question that no longer affects the defendants' liability.

[7] In crossing out the day or night box on the warrant, the issuing magistrate in this case may not have realized that rather than Rule 41(e)(2) & (a)(2), the timing authority for searches in drug cases is 21 U.S.C. § 879.  In the Fourth Circuit at least, no special showing is needed in a drug case to justify a nighttime search rather than a search during the day.  *United States v. Rizzi*, 434 F.3d 669, 674 (4th Cir. 2006), so holds: "At bottom, we hold that when a search warrant involves violation of drug crimes, the warrant can be served day or night so long as the warrant *itself* is supported by probable cause."

The warrant here was supported by probable cause and so under *Rizzi* the question is not the simple one about whether a nighttime search pursuant to a daytime warrant violates the Fourth Amendment. The question is rather more involved.  One way to frame the question is whether what occurred here was just a ministerial error on the part

a single reported case in this jurisdiction in which officers, federal or local, executed a daytime warrant at night. And this is not such a case, in light of Judge Huvelle's findings and the evidence supporting her findings.

The majority opinion concludes on this note: "Although well-founded doubt about the veracity of a plaintiff's factual allegations might steer us toward constitutional avoidance . . . the Defendants have not submitted contrary evidence nor even filed an answer denying Jones's allegations." Maj. Op. at 20-21.

I am tempted to place an exclamation point, or maybe two or three, at the end of that quotation. Instead I will insert several here: "well-founded doubt," "not submitted contrary

---

of the magistrate that the officers could disregard given § 879 (see Judge Friendly's opinion in *Ravich* cited below).

I have found no cases directly on point. But there are some analogous federal decisions involving searches pursuant to state court warrants. In these cases the state warrant authorized only a daytime search but the officers executed the warrant at night. *United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970) (Friendly, J.), is such a case. Judge Friendly held for the court that the search at night was the equivalent of a harmless error, not a Fourth Amendment violation. *Id.* at 1202. *United States v. Williams*, 570 F. App'x 137 (3d Cir. 2014), is a more recent example. There the state court warrant authorized only a daytime search but the officers executed it at night. Judge Scirica, writing for the court, held that the search did not violate the Fourth Amendment. *Id.* at 141–42. *See also United States v. Keene*, 915 F.2d 1164, 1168 (8th Cir. 1990) (relying on § 879); *Sibrian v. San Bernardino County*, 526 F. App'x 752, 753 (9th Cir. 2013) (holding that police officers' violation of state law prohibiting execution of search warrants at night did not violate the Fourth Amendment); *see generally* Claudia G. Catalano, *Propriety of Execution of Search Warrant at Nighttime*, 41 A.L.R. 5th 171 (1996).

evidence"!!!! Judge Huvelle pointed out – made a factual finding – that the officers, now defendants in Jones' case, testified under oath that they entered Jones' home after 6:00 a.m. and that they were telling the truth. That strikes me as a "well-founded" denial of Jones' "factual allegations." All the evidence, the overwhelming evidence, supported Judge Huvelle's findings. The defendants testified that Jones' claim that they entered at 4:45 a.m. was a lie. FBI Agent Naugle, one of the defendants in this civil case, made a contemporaneous entry on the warrant stating that the entry occurred at 6:15 a.m. And the defendants, in their brief in this court, maintained that Judge Huvelle's findings precluded Jones from claiming to the contrary in his civil suit against the officers who helped put him away. As for not filing an answer, the whole point of qualified immunity is that officers have "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Such cases should be resolved "at the earliest possible stage in litigation," even if that is before defendants file their answer. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). "Not submitted contrary evidence," "well-founded doubt." Whatever case the majority is writing about, it is not this one.